[No. H034546. Sixth Dist. Dec. 20, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
BENJAMIN PUENTES, Defendant and Appellant.

COUNSEL

Syda Kosofsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Deputy Attorney General, Seth K. Schalit and Scott C. Mather, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

PREMO, J.—A jury convicted defendant Benjamin Puentes of statutory rape of someone more than three years younger. The trial court suspended imposition of sentence and placed defendant on felony probation for three years. On appeal, defendant contends that (1) he was subjected to vindictive prosecution, (2) the conviction violates the proscription against multiple prosecutions set forth in Penal Code section 654[1] as construed by *Kellett v. Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206], (3) the felony punishment violates the state Constitution's double jeopardy clause, and (4) venue in Santa Clara County was improper. We agree with defendant's vindictive-prosecution point. Since the point is dispositive, we

---

[1] Further unspecified statutory references are to the Penal Code.

will reverse the judgment and direct a dismissal without addressing defendant's secondary claims.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was a juvenile hall counselor. He befriended the victim during her stay in juvenile hall. When he learned that the victim was to be transferred to a group home in Fresno, he told the victim to telephone him at juvenile hall when she left the home and identify herself as someone "from the bank." At some point, the victim ran away from the group home and returned to San Jose. She contacted defendant and arranged to meet him at a 7-Eleven store. Defendant picked her up at the store and drove her to his home in South San Francisco. The two went inside, drank beer, became intimate, and had sexual intercourse.

The People charged defendant with statutory rape (felony) and contributing to the delinquency of a minor (misdemeanor). The jury failed to reach a verdict, and a mistrial resulted. On retrial, the jury failed to reach a verdict on the felony and a mistrial resulted. But it convicted on the misdemeanor. The trial court sentenced defendant to one year in jail and ordered him to register as a sex offender. The People then successfully moved to dismiss the felony. On appeal, we reversed defendant's misdemeanor conviction for instructional error. (*People v. Puentes* (Mar. 29, 2007, H029010) [nonpub. opn.].) On remand at a preliminary hearing, the magistrate found that the People had failed to prove all elements of the misdemeanor count, denied defendant's motion to dismiss the felony count grounded upon vindictive prosecution, double jeopardy, and improper venue, and held defendant to answer the felony only. In response to the information in the trial court, defendant again unsuccessfully moved to dismiss the felony count.[2]

When defendant moved to dismiss at the preliminary hearing held before the third trial, the prosecutor testified that her motivation for moving to dismiss the felony count after the second trial was (1) "jurors told [her] that they just couldn't convict him [of a felony] because of what he did for a living [a law enforcement officer who would lose his job]," and (2) "defendant had received the maximum, [and] turned down probation, had been remanded into custody [and] . . . would lose his job and not have access to the juveniles again." She continued: "And because of the most compelling

---

[2] The trial court summarily ruled: "[T]he vindictive prosecution motion was already heard and denied by [the magistrate], and the vindictive prosecution motion is also denied here."

reason, that he was now in custody and got a year and was told he had to register, I was comfortable in coming back and telling his counsel and Court that we would forego further prosecution."

## VINDICTIVE PROSECUTION

Defendant urges that he was punished for exercising his right of appeal after the second trial because the prosecutor reinstituted the felony charge.

██ The concept of a vindictive prosecution applies not only to vindictiveness by a bench officer (*North Carolina v. Pearce* (1969) 395 U.S. 711 [23 L.Ed.2d 656, 89 S.Ct. 2072] (*Pearce*)), but also to conduct of a prosecutor (*Blackledge v. Perry* (1974) 417 U.S. 21 [40 L.Ed.2d 628, 94 S.Ct. 2098] (*Perry*)). "*Pearce* and *Perry* dealt with *postconviction* action by the state in response to the defendant's exercise of statutory rights. The central notion underlying the rule of those cases is that a person who has suffered a conviction should be free to exercise his right to appeal, or seek a trial de novo, without apprehension that the state will retaliate by 'upping the ante' with more serious charges or a potentially greater sentence." (*People v. Bracey* (1994) 21 Cal.App.4th 1532, 1543 [26 Cal.Rptr.2d 730].) "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' [Citation.] In a series of cases beginning with *North Carolina* v. *Pearce* and culminating in *Bordenkircher* v. *Hayes* [(1978) 434 U.S. 357 [54 L.Ed.2d 604, 98 S.Ct. 663]], the Court has recognized this basic—and itself uncontroversial—principle. For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." (*United States v. Goodwin* (1982) 457 U.S. 368, 372 [73 L.Ed.2d 74, 102 S.Ct. 2485].) *Goodwin* distinguished the situation, however, in which a defendant exercises a pretrial right from one in which the prosecutor acts after the defendant has exercised a postconviction right. In the pretrial situation, no presumption of vindictiveness arises. A presumption of vindictiveness arises only if the prosecutor "ups the ante" after exercise of a postconviction right. "While a defendant's exercise of some pretrial procedural right may present an opportunity for vindictiveness, 'a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule.' " (*People v. Bracey, supra*, at p. 1544.)

In *Perry*, the defendant was originally charged and convicted of a misdemeanor. He exercised his right to a trial de novo in a court of general jurisdiction. The prosecutor then obtained an indictment on felony charges,

based on the same facts as those in the misdemeanor trial. The United States Supreme Court granted a habeas corpus petition, holding that "it was not constitutionally permissible for the State to respond to [the defendant's] invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial *de novo*." (*Perry, supra,* 417 U.S. at pp. 28–29.)

In *Twiggs v. Superior Court* (1983) 34 Cal.3d 360 [194 Cal.Rptr. 152, 667 P.2d 1165], the defendant's first trial resulted in a hung jury. Before the retrial, the prosecutor added five prior felony conviction allegations which had not been alleged in the first trial. The existence of the prior convictions was known at the time of the first trial. The amendment of the information to add the prior conviction allegations was presumptively vindictive. The California Supreme Court remanded for a hearing to determine whether the filing of the allegations was in fact retaliatory. (*Id.* at p. 375.)

In the case of *In re Bower* (1985) 38 Cal.3d 865 [215 Cal.Rptr. 267, 700 P.2d 1269], the defendant was originally charged with second degree murder. He successfully moved for a mistrial after jeopardy had attached. Upon retrial, the prosecutor increased the severity of the charges to first degree murder. The California Supreme Court held that the defendant was properly convicted at the second trial, but that the offense should be reduced to second degree murder. (*Id.* at p. 880.)

Defendant takes the position that the dismissal of the felony charge after the second trial binds the People to not refile the charges in the absence of new evidence. In other words, he urges that he had the right to rely on the dismissal of the felony as with prejudice.

The People reply that "the refiling was not an escalation of [the] misdemeanor charge, but rather the reinstatement of the previously dismissed felony offense in addition to the same misdemeanor offense that had been reversed and remanded on appeal. The act of refiling placed [defendant] in the same position at the beginning of this trial as he was at the beginning of his first two trials—facing the charge of statutory rape reverting to status quo ante does not merit a presumption of vindictiveness."

■ It is true that defendant was charged with the same crime at the first trial, second trial, and third trial. The only difference among the three trials was that, before the third trial, the magistrate had granted defendant's motion to dismiss the misdemeanor and, thus, defendant was not tried for the misdemeanor. Thus, the only charge to which defendant was subject after his appeal was the same charge to which he had originally been subject. However, in moving to dismiss the felony, the People implicitly accepted that a dismissal was warranted "in furtherance of justice." (§ 1385, subd. (a).)

Indeed, one of the reasons behind the decision to dismiss was the People's knowledge that some of the second-trial jurors would not convict because of defendant's occupation.[3] The People's about-face—that it was no longer "in furtherance of justice" to have the felony dismissed—occurred only after defendant prevailed on appeal. This gives the appearance that defendant's successful appeal changed the People's mind about what charges were "in furtherance of justice." Stated another way, a misdemeanor was on the table before the appeal and a misdemeanor and a felony were on the table after the appeal. Under the circumstances, it appears that the successful appeal did in fact "up the ante." In our view, a presumption of vindictiveness was raised under these circumstances. (*In re Bower, supra*, 38 Cal.3d at p. 879 ["The presumption is not based on the subjective state of mind of the individual prosecutor and does not imply that he or she individually harbors an improper motive."]; cf. *Twiggs v. Superior Court, supra*, 34 Cal.3d at p. 372 ["The prosecution showed no interest in charging the additional prior convictions until the defendant insisted on a retrial, circumstances that plainly gave rise to a presumption of vindictiveness."].)

■ "Where the defendant shows that the prosecution has increased the charges in apparent response to the defendant's exercise of a procedural right, the defendant has made an initial showing of an appearance of vindictiveness. [Citation.] The defendant need not demonstrate that the prosecution in fact acted with a retaliatory motive. [Citation.] Once this prima facie case is made, the prosecution bears a 'heavy burden' of dispelling the appearance of vindictiveness as well as actual vindictiveness." (*Twiggs v. Superior Court, supra*, 34 Cal.3d at p. 371.)

In *Twiggs*, the court issued a writ of mandate directing the trial court to "hold an evidentiary hearing requiring the prosecution to meet its burden of rebutting the presumption of vindictive charging raised in this case by showing there was no actual vindictiveness." (*Twiggs v. Superior Court, supra*, 34 Cal.3d at p. 375.)

Here, however, the magistrate at the preliminary hearing before the third trial held a hearing on defendant's motion to dismiss at which the prosecutor testified and gave the People's reasons for moving to dismiss, which we have mentioned above, and refiling the felony charge. In concluding her direct testimony, the prosecutor reiterated and offered the following: "The most

---

[3] At the preliminary hearing held before the third trial in conjunction with defendant's motion to dismiss, the prosecutor specifically testified: "I had talked to a number of the jurors, I believe ten of them. I know ten of them. And I knew why they did not find him guilty on the felony. And that was one of my primary considerations, because that reason had always been in the back of my mind as a problem in this case. [¶] . . . [¶] . . . And the jurors told me that they just couldn't convict him because of what he did for a living of a felony."

compelling reasons for dismissing it initially were that the jury said that they were never going to convict of—they said police officer, of a felony for that. It was just too devastating to his career. And that I had tried this case twice, with all the issues that come with that. And that he had received a very good sentence. I mean, the maximum term. [¶] So when I dismissed it, I did it feeling very satisfied that justice had been served, especially with the registration and the year sentence, and that I knew he would lose his job. [¶] At that time, I didn't see any reason why we would need to put the victim through a third prosecution and why we would want to do that. We weren't going to get anything more. I don't believe [defendant], an initial sentence was ever going to prison. [*Sic.*] That was never even a discussion, never even contemplated. So knowing he could never go to prison, it just seemed a waste of everyone's time, and we had two chances to do it right the first time. [¶] So when I dismissed, I was very comfortable with it. When it came back for the reason it came back and I knew that we would most likely, at least it would be my recommendation to retry it, it seemed only appropriate if he was going to be tried to try him for what he was originally charged with and the conduct that I truly believe he engaged in."

The magistrate found the prosecutor's "testimony to be credible" and "honest when she says, you know, she takes it seriously, and if she can't prove something beyond a reasonable doubt, she has no business prosecuting it." He explained that he understood "the difference between individual vindictiveness and the appearance of vindictiveness." He continued: "Under the facts that I've heard—and I am glad that we had both prosecutors here, because it's—I'm the kind of person in terms of how I take in information that I do much better when I have it live than reading it from a cold sheet. And I've had the opportunity to observe them. And whether I agree with what they did or not doesn't matter. [¶] You know, were they acting in bad faith? I don't think they were acting in bad faith. Do I think that they were giving the appearance of acting in bad faith? I certainly can understand how your client can feel that they, you know, they have it out for him. I absolutely can understand that. But having heard all of the reasons, all of the rationale, I can't find by the required standard that there is the appearance or in fact that they were acting in bad faith."

Thus, the magistrate made two findings after the evidentiary hearing. The first—that there was no presumption of vindictiveness—is a legal question to which we have disagreed. The second—that there was no actual vindictiveness—is, in the first instance, a factual question given that such a question involves a dispute about the People's motives and the credibility of witnesses. To this we must follow the usual scope of review. "The character of judicial review . . . depends on whether the magistrate has exercised his power to render findings of fact. If he has made findings, those findings are conclusive if supported by substantial evidence." (*People v. Slaughter* (1984) 35 Cal.3d

629, 638 [200 Cal.Rptr. 448, 677 P.2d 854].) But, in the second instance, the question is a legal question given that the facts as found must support the conclusion reached. (Cf. *People v. Superior Court* (1985) 174 Cal.App.3d 1008, 1015 [220 Cal.Rptr. 330] [noting distinction between a magistrate's factual findings and a magistrate's legal conclusion regarding the sufficiency of the evidence presented].)

We conclude that the facts as found by the magistrate do not support the conclusion that the People carried their burden of dispelling the presumption of vindictiveness.

Here, the prosecutor testified that, at the time of the dismissal, she believed that (1) a jury would not convict defendant of a felony, (2) it would be a waste of time to try the case a third time after failing twice, and (3) justice had been served by a maximum misdemeanor sentence. But this evidence, at best, only addresses why the prosecutor dismissed the felony after the second trial. It does not address the pivotal question of why the prosecutor refiled the felony after the appellate remand. The only evidence which addresses this question is the prosecutor's admission that "When it came back . . . it seemed only appropriate if he was going to be tried to try him for what he was originally charged with and the conduct that I truly believe he engaged in."

■ Thus, the prosecutor believed that justice had been served by the misdemeanor conviction only until defendant prevailed on appeal. That the magistrate found that the prosecutor was honest, serious, and acting in a good faith belief that she could prove the felony beyond a reasonable doubt does not overcome the undisputed fact that the prosecutor changed her mind about the interests of justice only after defendant prevailed on appeal. Without more, the only inference from this fact is that the prosecutor changed her mind because defendant prevailed on appeal. (*In re Bower, supra*, 38 Cal.3d at p. 879 ["In order to rebut the presumption of vindictiveness, the prosecution must demonstrate that (1) the increase in charge was justified by some objective change in circumstances or in the state of the evidence which legitimately influenced the charging process and (2) that the new information could not reasonably have been discovered at the time the prosecution exercised its discretion to bring the original charge."].)

Under the circumstances, the People did not carry their burden to dispel the presumption of vindictiveness.

## DISPOSITION

The judgment is reversed. The trial court is directed to dismiss the information.

Rushing, P. J., and Elia, J., concurred.